UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  | Civil No. 13-3316 (NLH) |
|---|---|
| VAUGHN MOLOCK, | |
| Plaintiff, | |
| v. | **OPINION** |
| BOROUGH OF CLEMENTON, et al., | |
| Defendants. | |

**APPEARANCES:**

PAUL ROBERT RIZZO
NICHOLAS F. POMPELIO
DIFRANCESCO, BATEMAN, KUNZMAN, DAVIS & LEHRER & FLAUM, P.C.
15 Mountain Boulevard,
Warren, NJ 07059
Attorneys for Plaintiff Vaughn Molock

DEAN R. WITTMAN
MATTHEW B. WIELICZKO
MICHAEL J. HUNTOWSKI
ZELLER & WIELICZKO LLP
120 Haddontowne Court
Cherry Hill, NJ 08034
Attorneys for Defendants Borough of Clementon, Joseph
McDevitt, Brian Shue, Neil Clark

**HILLMAN, District Judge:**

Vaughn Molock[1] was arrested and spent three weeks in jail

for an armed robbery he did not commit.  Molock was released and

_____

[1] The Complaint and some other documents incorrectly spell
Plaintiff's first name "Vaugn."  This Court will consistently
use "Vaughn" throughout the Opinion.

the charges were dropped when an investigator from the prosecutor's office conducted a photo array with the victim and she did not identify Molock.  In this civil rights lawsuit, Molock claims that his arrest and three-week incarceration pursuant to an arrest warrant obtained by Clementon Police Officer Joseph McDevitt violated the Fourth Amendment.  He claims in essence that McDevitt both lied and omitted material facts in his application for an arrest warrant.  McDevitt averred that the victim had identified Molock as one of two perpetrators of an armed robbery, but, in fact, the victim did not identify Vaughn Molock; she merely referred to a friend she called "Vaughn."[2]  McDevitt did not tell the judge that the victim said to fellow officer and defendant Shue that her friend "Vaughn" was short, Black, talked like a girl, and lived in Pine Hill.  Nor did McDevitt tell the judge that he suspected Molock because Officer Shue told him he believed that Vaughn Molock was the person described by the victim because Shue had encountered Molock the night before and thought he was short, had a high pitched voice, and lived in Pine Hill.

---

[2] The victim did not spell the name or state that it was the friend's first or last name.

2

Although the question of probable cause in this case presents a very close question, the Court will deny McDevitt's motion for summary judgment[3] because (1) McDevitt's warrant affidavit falsely stated that the victim had identified Molock;[4] (2) the warrant affidavit recklessly omitted the fact that the victim said that she knew one of the perpetrators merely as "Vaughn" and that she told Shue that "Vaughn" was a short Black

---

[3] The summary judgment motion was filed by Police Officer Joseph McDevitt, Police Officer Brian Shue, Police Officer Neil Clark, and the Borough of Clementon. (ECF No. 52.)  In response to the motion, Molock consented to dismissal of claims in count one against Clark and the claims in counts two and three against the Borough of Clementon and fictitious supervisors and corporations. (ECF No. 55 at 4.)  The Order filed with this Opinion will, therefore, dismiss the claims against all Defendants other than McDevitt.

[4] In defendant's opening brief they contend that the victim was shown a driver's license photo of the plaintiff before he was arrested.  There is scant, if any, evidentiary support for this assertion.  While it does appear uncontested that several weeks after the incident the victim told the investigator from the prosecutor's office that she had identified Molock when Clementon police showed her a black and white photocopy of his driver's license, this assertion is undermined by the defendants' own statements.  The investigator's report adds that McDevitt told the investigator that he had not shown the victim a black and white copy of Molock's driver's license.  (ECF No. 52-11.)  Moreover, neither the depositions of McDevitt and Shue nor their incident reports indicate that either of them showed the victim a copy of Molock's driver's license.  As the record demonstrates that McDevitt had no knowledge of the victim's being shown Molock's driver's license, this issue cannot be relevant to whether McDevitt had probable cause to seek a warrant for Molock's arrest.

man who spoke like a girl and lived in Pine Hill; (3) the warrant affidavit recklessly omitted that Shue told McDevitt that he believed that Vaughn Molock was the "Vaughn" described by the victim; (4) the warrant affidavit recklessly omitted the fact that Shue had reached this conclusion based on an earlier encounter with Molock.  While we conclude that McDevitt was objectively reasonable in accepting Shue's assessment as part of his own assessment of the existing and developing evidence, McDevitt's reckless omissions of material facts in his warrant application coupled with his failure to take certain basic investigative steps before seeking the warrant undermine a legal finding of probable cause that Molock was involved in the armed robbery.

However, the Court will grant summary judgment in favor of Officer Shue.  Shue is entitled to qualified immunity because it was reasonable for Shue to have informed the investigating officer, McDevitt, that Molock seemed to fit the description the victim gave of the person who had set her up, a description that largely mirrored Shue's personal observations a day earlier, and an incident that also involved the possible brandishing of a weapon.  However, unlike McDevitt, Shue did not apply for the arrest warrant, did not recklessly disregard the truth in the warrant affidavit, nor did he fail to take certain rudimentary

4

investigative steps that would have undercut probable cause much
earlier in the investigation and prosecution of plaintiff.

## I.  BACKGROUND

Vaughn Molock sues McDevitt and Shue for violation of his
Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983.
On June 21, 2011, Shue was dispatched to the Mansions Apartments
in Pine Hill, a municipality near Clementon, concerning an
incident allegedly involving Lavon Hall's (a Black man)
brandishing a silver gun in an apartment in the complex.  While
Shue was standing outside the apartment building, Molock came
and sat down on the steps.  Lindenwold Police Officer Benevento
arrested Molock after Molock argued with Benevento about an
order not to eat any food.  Molock was released shortly after
posting bail.

The next day, on June 22, 2011, McDevitt and Shue were
dispatched to investigate a victim's (Shales Barkley) report of
an armed robbery in Clementon.  McDevitt interviewed the victim
before he applied for the arrest warrant.  The transcript of the
interview shows that, according to Barkley, at about 9:15 p.m.
on June 22, 2011, she drove her friend "Vaughn" into the Pine
Valley Court Apartment Complex to meet his girlfriend, but the
person waiting for them was, instead, a Black male who got into
the back of the car, pointed a silver gun at her, and asked her

5

for everything.  (ECF No. 52-8.)  According to the police
report, Barkley told McDevitt that "Vaughn" then opened up the
front door of the car and walked away.  She believed Vaughn had
set her up because he seemed to know the other man.  Barkley
stated that after Vaughn left, the other man took money, her
cell phone, and her keys, and he threatened to kill her if she
got out of the car within 10 minutes.  Notably, Barkley did not
provide Vaughn's full name in her interview, she did not spell
Vaughn or specify that Vaughn was her friend's first, last name,
or even a nickname.

     McDevitt's deposition confirms that Barkley did not know or
give him Vaughn's full name.  Significantly, despite the ready
availability of a photograph of Plaintiff from the arrest the
day before and perhaps otherwise, McDevitt did not ask Barkley
to identify Vaughn in a photo array prior to preparing the
criminal complaint.  In his deposition, McDevitt admitted that
he accepted Shue's conclusion that "Vaughn" was Vaughn Molock:

     [t]hrough Officer Shue's knowledge of Vaughn Molock .
     . .  So, Officer Shue had dealt with Vaughn Molock the
     day prior in Pine Hill while assisting them with an
     investigation.  I was not present for that.  We
     determined it was him based on Ms. Barkley's
     description of him, where he was from, his voice, his
     first name.  And Officer Shue was familiar with him
     enough that he identified Vaughn Molock based off of
     the victim's statements . . .  [This happened] after
     he had returned to where I sent him to go look for the
     video.  He also spoke with Ms. Barkley, as well, and

                              6

> obtained more information regarding Molock's
> description, and that's indicated in his supplemental
> report.

(ECF No. 55-5 at 11.)

McDevitt further testified that after he returned to

headquarters but before he typed up the complaint-warrants,

Officer Heron from the Pine Hill Police Department called "me on

the phone that night and advised me that they were recently out

with Vaughn Molock and this other individual, Lavon Hall, the

previous evening.[5]  One of them was in possession of a silver

gun.  And so, they felt that it was relevant to let me know

that.  Because we had a very similar incident just occur[.]"

(ECF No. 55-5 at 17.)

In Shue's deposition, he essentially had no independent

recollection of the incident and relied on his report.  Shue's

supplemental report states in relevant part:

> On Tuesday, June 21, 2011 at approximately 2307 hours,
> I assisted the Pine Hill Police Department with a
> reported armed male at 320 W. Branch Avenue Apt. 424.
> While assisting Pine Hill I stood by with a black male
> named Vaughn Molock who was in custody outside of the
> 400 building.  I stood with Mr. Molock for
> approximately 30 minutes while Officers completed
> their investigation.  Mr. Molock was a short black
> male with a high pitched voice.

---

[5] Various documents refer to Hall as Lavon or Lavorn, but in his
deposition, Officer McDevitt confirmed that Hall's name is
spelled "L-A-V-O-N."  (ECF No. 55-5 at 12.)  This Court will
refer to him as Lavon Hall.

7

On Wednesday, June 22, 2011 at approximately 2130 hours, I assisted Patrolman McDevitt with a reported armed robbery.

While Ptl. McDevitt was speaking with K-9 Officer Witz of the Pine Hill Police Department, I spoke with the victim, Shales Barkley. Ms. Barkley, who was extremely upset, stated that a black male pointed a gun at her and went through her vehicle. I asked Ms. Barkley what she was doing in the apartment complex and she stated that she was helping a friend out who needed a ride. I asked Ms. Barkley who and where her friend was. Ms. Barkley stated that his name was Vaughn and that he ran away during the robbery. I asked Ms. Barkley if she could describe Vaughn to me and she gave the following description: a short black male that talks funny. I asked Ms. Barkley if she could elaborate on how Vaughn talks and she stated that he talks like a girl. I then asked Ms. Barkley if she knew where Vaughn lived and she replied in the apartments over there, pointing towards Pine Hill. I asked Ms. Barkley if she could be more specific about where Vaughn lived. Ms. Barkley stated that he lived in the apartments on Branch Avenue next to Chalet. I asked Ms. Barkley if the apartments where Vaughn lived were to the left or right of Chalet and she stated the left point[ing] up the hill. Ms. Barkley didn't know Vaughn's apartment number but she stated that he lives towards the front of the complex.

I advised K-9 Officer Witz and Ptl. McDevitt that the suspect described by Ms. Barkley was Vaughn Molock from the Mansion's Apartment complex.

(ECF No. 52-4 at 4.)

To obtain the warrant for Molock's arrest on the charge of conspiracy to commit robbery, McDevitt averred in his warrant affidavit only the following scant facts in asserting that probable cause existed:

The victim advised that she was "set up" by the Defendant who asked her to drive him to Pine Valley

8

> Court to pick up a girlfriend.  When arriving, he
> instead contacted an unknown Black male and told him
> to enter the vehicle.  This male then subsequently
> robbed the victim, then both males fled to Blackwood
> Road leaving the victim in the parking lot.

(ECF No. 52-13.)

Similarly, to obtain the warrant for Molock's arrest for

armed robbery, McDevitt certified in his warrant affidavit the

following probable cause:

> Defendant allowed a friend into the victim's vehicle
> at which time he brandished a silver revolver handgun
> and threatened to kill the victim, while committing a
> theft.  Both males fled the scene after toward
> Blackwood Road, recorded statement provided by the
> victim.

(ECF No. 52-13.)

Molock claims that McDevitt and Shue caused a warrant to

issue for Molock's arrest based on their inaccurate "claim[]

that the alleged victim had identified Plaintiff as the

perpetrator of an armed robbery."  (ECF No. 18 at 3.)  Molock

was incarcerated for three weeks even though, according to a

letter Molock's criminal attorney sent to the prosecutor, the

victim repeatedly advised that Molock was not involved in the

robbery.  Molock was released three weeks after his arrest and

the armed robbery charges were dismissed by the prosecutor due

to misidentification after an investigator from the prosecutor's

office conducted a photo array and the victim did not identify

Molock.  Molock claims in the Complaint that McDevitt and Shue
seized him in violation of the Fourth and Fourteenth Amendments
and 42 U.S.C. § 1983 (Count One).

Defendants filed a motion for summary judgment on all
claims, arguing that there was probable cause to arrest Molock
and McDevitt and Shue are entitled to qualified immunity.

## I.  DISCUSSION

A.  Summary Judgment Standard

Rule 56(a) provides that a court "shall grant summary
judgment if the movant shows that there is no genuine dispute as
to any material fact and the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(a); see also Sulima v.
Tobyhanna Army Depot, 602 F.3d 177, 184 (3d Cir. 2010).  "An
issue of material fact is 'genuine' if the evidence is such that
a reasonable jury could return a verdict for the nonmoving
party."  Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 545 (3d
Cir. 2012).  The substantive law governing the dispute will
determine which facts are material, and only disputes over those
facts "that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary
judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).  "[I]n ruling on a motion for summary judgment, '[t]he
evidence of the nonmovant is to be believed, and all justifiable

10

inferences are to be drawn in his favor.'" <u>Tolan v. Cotton</u>, 134
S.Ct. 1861, 1863 (2014) (quoting <u>Anderson v. Liberty Lobby</u>, 477
U.S. at 255); <u>see also</u> <u>Aman v. Cort Furniture Rental Corp.</u>, 85
F. 3d 1074, 1080-81 (3d Cir. 1996).

B.   <u>Qualified Immunity</u>

Molock claims that McDevitt and Shue caused a warrant for
his arrest to issue without probable cause in violation of his
Fourth Amendment rights under 42 U.S.C. § 1983 by McDevitt's
submitting a warrant application recklessly containing material
misstatements and omissions.   In resolving questions of
qualified immunity at summary judgment, a court must first ask
"whether the facts '[t]aken in the light most favorable to the
party asserting the injury, . . . show the officer's conduct
violated a [federal] right." <u>Tolon v. Cotton</u>, 134 S.Ct. 1861,
1865 (2014)(quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).
The second prong of the qualified immunity analysis requires a
court to determine "whether the state of the law at the time of
an incident provided fair warning to the defendants that their
alleged [conduct] was unconstitutional." <u>Tolon</u>, 134 S.Ct. at
1866 (citation and internal quotation marks omitted).   "A
Government official's conduct violates clearly established law
when, at the time of the challenged conduct, '[t]he contours of
[a] right [are] sufficiently clear' that every 'reasonable

11

official would have understood that what he is doing violates that right.'  We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, ___, 131 S.Ct. 2074, 2083 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Where an officer whose request for a warrant allegedly caused an unconstitutional arrest claims qualified immunity, a court must apply the standard of objective reasonableness used in the context of a suppression hearing.  See Malley v. Briggs, 475 U.S. 335, 344 (1986) (citing United States v. Leon, 468 U.S. 897 (1984)).  In United States v. Leon, 468 U.S. at 923, the Court held that suppression is "an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."  In other words, "suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or would not have harbored an objectively reasonable belief in the existence of probable cause." Id. at 926.

The Third Circuit instructs that, "[i]f a police officer submits an affidavit containing statements he knows to be false or would know are false if he had not recklessly disregarded the

truth, the officer obviously failed to observe a right that was clearly established.  Thus, he is not entitled to qualified immunity." Lippay v. Christos, 996 F.2d 1490, 1504 (3d Cir. 1993) (citing Malley v. Briggs, 475 U.S. at 345).  Where a § 1983 defendant asserts qualified immunity on such a Fourth Amendment claim, the District Court need not submit the immunity claim to the jury "because the immunity issue necessarily [is] subsumed in the court's charge on the section 1983 claim." Lippay, 996 F.2d at 1503.

C.   Fourth Amendment Seizure Claim Against Police Officers

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . the persons or things to be seized." U.S. Const. amend IV.[6]  In Franks v. Delaware, 438 U.S. 154 (1978), the Court held that if a criminal defendant shows by a preponderance of the evidence that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the

---

[6] "The simple language of the Amendment applies equally to seizures of persons and to seizures of property.  Our analysis in this [arrest] case may therefore properly commence with rules that have been well established in Fourth Amendment litigation involving tangible items." Payton v. New York, 445 U.S. 573, 585, (1980).

warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause [and] the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id. at 155-56.

To succeed on a seizure claim under Franks and 42 U.S.C. § 1983,[7] a plaintiff must prove by a preponderance of the evidence: "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination." United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006). The Third Circuit instructs that "(1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know; and (2) assertions are made with reckless disregard for the

---

[7] To recover under 42 U.S.C. § 1983, a plaintiff must show:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." <u>Wilson v. Russo</u>, 212 F.3d 781, 783 (3d Cir. 2000). "To determine the materiality of the misstatements and omissions, we excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." <u>Wilson</u>, 212 F.3d at 789.

> (1) Were Assertions and Omissions Made with Reckless Disregard for the Truth?

The determination on summary judgment whether a warrant affidavit is false or misleading must be undertaken "with scrupulous neutrality;" the issue is not to be "viewed from the deliberately slanted perspective that summary judgment demands."[8] <u>Reedy v. Evanson</u>, 615 F.3d 197, 214 n.24 (3d Cir. 2010).

McDevitt's warrant affidavit contained at least two misstatements. First, McDevitt averred that "[t]he victim advised that she was 'set up' by the Defendant who asked her to drive him to Pine Valley Court to pick up a girlfriend." (ECF No. 52-13.) This statement was false. Barkley never identified Vaughn Molock. The Officers merely reached this conclusion

---

[8] "Once that review and correction process is complete, the corrected affidavit . . . simply becomes one more set of factual assertions that must then be viewed in the light most favorable to the non-movant." <u>Reedy</u>, 615 F.3d at 214 n.24.

based on other information.  It is undisputed that the victim told McDevitt and Shue only that "her friend Vaughn" had set her up.  "The absence of sufficient grounding to support an averment therefore constitutes an 'obvious reason [ ] for doubt' under Wilson, 212 F.3d at 788, allowing the [jury] to infer that an affiant acted with reckless disregard for the truth." United States v. Brown, 631 F.3d 638, 648 (3d Cir. 2011).  Because McDevitt and Shue's depositions and reports indicate that the victim did not identify or mention Molock in her statements to them, a jury could find that McDevitt had obvious reasons to doubt the truth of his assertion in his warrant application that the victim specifically identified Vaughn Molock as involved in the robbery.

Second, McDevitt indicated in his warrant application that both males fled the scene together after the unknown Black male robbed the victim by gun.  But in her recorded statement to McDevitt dated June 22, 2011, the victim states that Vaughn opened the front door of the car and ran away right after the unknown Black male got in the back seat and pulled out a gun. The victim told McDevitt that, after Vaughn left, the unknown male threatened to kill her, removed the contents of the armrest, robbed her, and then fled.  (ECF No. 52-8 at 5.) McDevitt's report confirms that the victim told him that Vaughn

16

fled the scene prior to the unknown male.  (ECF No. 52-7 at 3.)
Since the victim's recorded statement and McDevitt's police
report indicate that Molock left the scene prior to the unknown
male, a jury could find that McDevitt had reason to doubt the
truth of the statement in the affidavit that both males fled
together.[9]

A jury could also find that McDevitt recklessly omitted
from the warrant application facts that any reasonable person
would know a judge assessing a warrant application would want to
know. See Wilson, 212 F.3d at 783.  Omitted from the affidavit
is the fact that the victim told McDevitt in her recorded
statement dated June 22, 2011, that her friend Vaughn, who was a
"one-time fling," was the accomplice of the man who robbed her
by brandishing a gun. (ECF No. 52-8 at 3.)  Also, no evidence
indicates that the victim spelled "Vaughn" or specified that
Vaughn was the accomplice's first name.  McDevitt's police
report dated June 23, 2011, confirms that the victim referred
only to a friend she called "Vaughn." (ECF No. 52-7 at 3) ("She
advised that a friend named 'Vaughn' (later identified as Vaughn
Molock) asked her to pick him up from Crown Fried Chicken on

_____

[9] It appears that Shue told McDevitt that surveillance video
showed two males fleeing the area merely seconds apart.

Blackwood Road and take him to Pine Valley Court.")  In
addition, McDevitt acknowledged in his deposition that the
victim told him only that a person she knew as "Vaughn" had set
her up to be robbed by an unknown man.

McDevitt's omission of Barkley's possible inconsistencies
and lack of clear and positive identification must be juxtaposed
with how "Vaughn" became Vaughn Molock with the certainty the
warrant application implies.  McDevitt omitted the fact that it
was he, and not the victim, who linked Vaughn Molock to the
crime based on Shue's statement to him that Shue thought that
Vaughn Molock was the suspect described by the victim.  A
reasonable person could conclude that a judge would want to know
this.  In that regard, McDevitt omitted the following facts from
Shue's supplemental police report:  (1) the victim told Officer
Shue that her friend "Vaughn," who was involved in the incident,
is a short Black male who "talks like a girl" and lives in the
apartments on Branch Avenue; (2) on June 21, 2011, the evening
before the robbery, while Officer Shue was dispatched to the
outside of the Mansions Apartments on W. Branch Avenue in Pine
Hill, he was standing near Vaughn Molock, whom Officer Shue
perceived to be a short Black man with a high pitched voice; (3)
Molock was taken into custody on June 21, 2011, outside the

18

Mansions Apartments;[10] and (4) after speaking with the victim, Shue told McDevitt that the suspect described by the victim was Vaughn Molock from the Mansion's Apartment complex in Pine Hill. (ECF No. 52-4 at 4.)

To be clear, we do not question the reasonableness of Shue's suspicion that the victim identified the person he knew to be Vaughn Molock.  Indeed, Shue's analysis of the events of June 22 as relayed by the victim coupled with his personal observations from the night before, and the inferences he drew from those two events, strikes us as ordinary, competent, reasonable, "connect the dots", police work.  Nor do we suggest that, standing alone, McDevitt was unreasonable in considering Shue's analysis in McDevitt's own assessment of probable cause. What made sense to Shue no doubt made sense to McDevitt as well.

---

[10] Officer Shue's report states that Vaughn Molock was taken into custody and Lindenwold Officer Benevento's report describes Molock's arrest on June 21, 2011.  A jury could find that Shue knew the following facts in the incident report written by Lindenwold Police Officer Benevento:  (1) Lavon Hall was the subject of the June 21, 2011, investigation involving a male who brandished a silver gun in the Mansions Apartment complex in Pine Hill and (2) Vaughn Molock, who was sitting outside on a step after the police arrived at the apartment complex on June 21st, was arrested (booked and released) by Lindenwold Officer Benevento because Molock refused to obey his order not to eat and an altercation erupted between Molock and Benevento.  (ECF Nos. 52-2, 52-3.)

However, what matters here is that none of this was conveyed to the deputy court administrator who approved the warrant who may have wanted corroboration for Shue's surmise. McDevitt knew, because Shue had told him, that Molock was arrested the night before locally and therefore a current photograph of Molock was close at hand.  The judge might easily have concluded that such an investigative step was unnecessary and redundant if the victim knew Molock personally by name and face and had positively identified him as the person involved.

Conversely, if the issuing official had known that it was Shue's conclusion, however reasonable on its face standing alone, and McDevitt's adoption of the conclusion that Molock was the perpetrator and not the positive identification of the victim who new Molock intimately, the judge may have sought or required corroboration prior to the issuance of the warrant. From the perspective of McDevitt, an objectively reasonable officer would have viewed the easily available photograph as readily available corroboration of Shue's conclusion.  In sum, the omission of these facts is material because they undermine the warrant application's false assertion that the victim identified Molock as the person who set her up by revealing the true basis for that conclusion.

Based on this evidence known to McDevitt, a jury could find that McDevitt's affidavit recklessly omitted relevant facts and recklessly stated facts that McDevitt had reason to doubt were true.  The reckless assertions and omissions satisfy the first prong of the Franks standard as to McDevitt.  However, because Shue did not apply for the warrant, he did not recklessly disregard the truth in a warrant application or otherwise act in an objectively unreasonable manner.

(2) Were the Reckless Assertions and Omissions Material?

The final question under Franks is whether the reckless assertions and omissions of Officer McDevitt are material to a finding of probable cause.  This too presents a very close call.  "To determine the materiality of the misstatements and omissions, [a court] excise[s] the offending inaccuracies and insert[s] the facts recklessly omitted, and then determine[s] whether or not the 'corrected' warrant affidavit would establish probable cause."  Wilson, 212 F.3d at 789.

"Probable cause exists if there is a fair probability that the person committed the crime at issue."  Wilson v. Russo, 212 F.3d 781, 789 (3d Cir 2000).  "[P]robable cause is a reasonable ground for belief of guilt [which] must be particularized with respect to the person to be searched or seized."  Maryland v. Pringle, 540 U.S. 366, 371 (citations and internal quotation

21

marks omitted); see also Beck v. Ohio, 379 U.S. 89, 91 (1964).

"No matter how brief or succinct it may be, the evidentiary component of an application for an arrest warrant is a distinct and essential predicate for a finding of probable cause." Kalina v. Fletcher, 522 U.S. 118, 130-131 (1997). In determining the objective reasonableness of an arrest warrant application, ""[i]t is necessary to consider the objective reasonableness . . . of the officers who originally obtained it or who provided information material to the probable-cause determination." Leon, 468 U.S. 897, 923 n.24. See United States v. Calisto, 838 F.2d 711, 714 (3d Cir. 1988) (holding that the conduct of officers who relayed facts to the affiant is relevant to the Franks inquiry). Although, in general, "the question of probable cause in a section 1983 damage suit is one for the jury," Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998), a district court may conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997).

In this case, the Court must determine whether, construing the evidence in the light most favorable to Molock, a jury could find that, after deleting the inaccurate statements from the

22

warrant affidavit and supplying the information from Shue's report that McDevitt omitted, the corrected affidavit would have established probable cause that Molock was involved in the June 22, 2011, robbery.  See Wilson, 212 F.3d at 789; Sherwood, 113 F.3d at 400.

For example, in Reedy v. Evanson, 615 F.3d 197 (3d Cir. 2010), the Third Circuit reversed an order granting summary judgment to Evanson on Reedy's claim that Evanson caused her arrest without probable cause by recklessly including false statements in, and recklessly omitting relevant information from, the warrant affidavit where the District Court found that the affidavit, after correction, provided probable cause that Reedy had falsely reported rape to cover up her theft and receipt of stolen property.

On July 14, 2004, while working as a cashier at a Gulf convenience store, 19-year old Sara Reedy was sexually assaulted and robbed at gunpoint by a serial sex offender.  She reported the crime to police within minutes, subjected herself to a rape kit examination, and gave three detailed and consistent statements to police and hospital staff.  Frank Evanson, the lead investigator, believed that Reedy had fabricated the rape and robbery to cover up her and her boyfriend's theft of over $600 in cash from the store, since Reedy and her boyfriend

23

applied to rent a mobile home on July 19, 2004, and put down a security deposit of $165 on July 20, 2004, after receiving an additional $200 from Catholic Charities.  On October 13, 2004, Evanson became the lead investigator on another rape and robbery involving similarities to the attack on Reedy, and on January 14, 2005, five months after ceasing his investigative efforts into Reedy's rape case, Evanson submitted an affidavit for a warrant to arrest Reedy for falsely reporting the rape and robbery, for theft, and for receiving stolen goods.  Reedy spent five days in jail and the charges against her were dropped after the serial rapist was captured while he was assaulting a female convenience store clerk and he confessed to raping Reedy.

Reedy sued Evanson and others for unlawful seizure under the Fourth Amendment and 42 U.S.C. § 1983.  The District Court granted summary judgment to defendants, finding that Evanson knowingly or recklessly included false statements in and omitted relevant facts from his warrant affidavit, but that the corrected affidavit provided probable cause that Reedy had committed the crimes Evanson charged her with.

The Third Circuit reviewed Evanson's warrant affidavit in detail, keeping in mind that (1) "[a]n officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself)

24

suggests that probable cause exists," Reedy, 615 F.3d at 214

(quoting Wilson, 212 F.3d at 790) (internal quotations omitted),

and (2) the determination of the affiant's motivation and

reconstruction of the warrant affidavit without material

omissions or misstatements "ensures that a police officer does

not make unilateral decisions about materiality of information,

or, after satisfying him or herself that probable cause exists,

merely inform the magistrate or judge of inculpatory evidence."

Id. at 213 (citation and internal quotation marks omitted).

After identifying the reckless falsehoods and omissions in the

warrant affidavit, the Third Circuit found that Evanson's

affidavit was recklessly slanted against Reedy, even though

Evanson had conducted almost no investigation:

> Evanson's investigation into the reported rape and
> robbery appears to have focused exclusively on the
> theory that Reedy was a liar and thief. The police
> report—and, for that matter, the entire record—
> indicates that, after a brief search of the woods on
> the night of the incident, Evanson and the other
> officers made no effort to locate Reedy's assailant or
> to consider anyone but Reedy and Watt as suspects,
> even after the Landmark Attack. As Reedy tells it, the
> night she was attacked, while she was still in the
> hospital and after she had given Evanson a detailed
> description of the events that matched what she had
> already told Mascellino, and before Evanson had done
> any further investigation, he called her a liar and
> repeatedly accused her of stealing the money from the
> store.

Reedy, 615 F.3d at 217 (footnote omitted).

After reconstructing the affidavit and viewing the facts in the reconstructed affidavit in the light most favorable to Reedy, the Third Circuit found that "Evanson's failure or refusal to compare the two attacks he was investigating – stating that only a DNA match or a confession would link the two attacks – demonstrates that he chose to 'disregard plainly exculpatory evidence,' Wilson, 212 F.3d at 790, and that he created the 'unnecessary danger of unlawful arrest.' Malley v. Briggs, 475 U.S. 335, 345 . . . (1986)".  The Court of Appeals held that the facts and circumstances in the reconstructed warrant affidavit were not sufficient to warrant a prudent person to believe that it was probable that Reedy had committed the offenses of false reporting, theft, and receiving stolen property:

> In sum, within hours of the attack on Reedy, Evanson
> concluded that Reedy had fabricated the robbery and
> sexual assault. Three months later, another robbery
> and sexual assault occurred involving substantial
> similarities to the attack on Reedy. The later attack
> was identified as the work of a serial rapist. Despite
> that, Evanson declined to consider that the two
> attacks were linked. Six months after Reedy reported
> that she had been robbed and assaulted at the Gulf
> station, Evanson arrested her on the same theory he
> had formed the night that he met her at the hospital.
> Taking all inferences in favor of Reedy, a reasonable
> jury could conclude that, at the time the arrest was
> made, the facts and circumstances within Evanson's
> knowledge were not sufficient to warrant a prudent man
> in believing that [the suspect] had committed . . . an
> offense. Accordingly, on this record, viewed in

26

Reedy's favor, it was error for the District Court to
hold that Evanson had probable cause to arrest Reedy.

Reedy, 615 F.3d at 223 (footnote, quotation marks and citation
omitted).

Similarly, in United States v. Brown, 631 F.3d 638 (3d Cir.
2011), the Third Circuit affirmed the suppression of evidence on
the ground that it had been obtained by way of a materially and
recklessly false warrant affidavit in violation of the Fourth
Amendment and Franks.  Two men wearing "Scream" masks robbed a
bank, fled the scene, and made off in a school district van that
a school employee had left running near the administration
building.  Thirty minutes later, police found the van a half-
mile from the place where the van was stolen and found a Scream
mask containing DNA material inside the van.  Witnesses told
police they had seen a silver Volkswagen Jetta with a Maryland
license plate near the place where police found the van on the
morning of the robbery.  After one of the bank tellers told
police that she recognized one of the voices of the robbers as
belonging to John Wingate, a bank customer, police learned that
Wingate's nephew, Allen Brown, owned a silver Jetta, lived in
Maryland, and was visiting his uncle on the morning of the
robbery.  A police officer prepared a warrant affidavit.  In the
affidavit, the police officer falsely stated that witnesses

reported seeing the stolen school van meeting up with a silver
Volkswagen Jetta having a possible Maryland license and then saw
the Jetta drive away from the area where the van was left.
After conducting a Franks hearing, the district judge found that
witnesses had not seen the van meet up with the Jetta and then
drive away, that the officer had acted with reckless disregard
for the truth in preparing the warrant affidavit, and that, with
the false statements removed, the affidavit did not contain
probable cause.

The Third Circuit held that the false statement in the
warrant affidavit was made with reckless disregard for the truth
and that, although the issue was not raised, the court would
affirm the District Court's holding with respect to materiality
because, after the false statements were removed, the affidavit
"does not connect Brown's Jetta to the stolen van, and there is
nothing else from which the magistrate could have inferred that
Brown committed the robbery." Id. at 642 n.4.

In this case, McDevitt's corrected affidavit would have
stated that the victim knew the accomplice as "Vaughn" but that
she did not in any manner identify "Vaughn" as Vaughn Molock.
Thus, McDevitt had no independent information indicating that
Vaughn Molock was the "Vaughn" to whom the victim referred.
McDevitt relied solely on Shue's conclusion that "Vaughn" was

28

Vaughn Molock.  But the statements of Shue to McDevitt
"conveying that there is probable cause for [Molock's] arrest,
by themselves, cannot provide the 'facts and circumstances
necessary to support a finding of probable cause.'" Rogers v.
Powell, 120 F.3d 446, 453 (3d Cir. 1997) (quoting Whitely v.
Warden, 402 U.S. 560, 568 (1971)).  The lawfulness of an arrest
made in reliance on the statements of fellow officers "turns on
whether the officers who issued the [statements] possessed
probable cause to make the arrest." Rogers, 120 F.3d at 453
(quoting United States v. Hensley, 469 U.S. 221, 231 (1985)).

The Court must consider the facts on which Shue based his
conclusion that he thought Molock was one of the perpetrators.
As outlined above, Officer Shue learned from the victim that
"Vaughn" was a short Black male, talked like a girl, and lived
in one of the apartment complexes on North Branch Avenue.
Shue's report also indicates that he was with Molock for a half-
hour the evening before, that Molock was taken into custody that
evening by another officer, that Molock lived in the Mansions
Apartments on N. Branch Avenue, and that Shue perceived Vaughn
Molock to be short and his voice to be high pitched.  (ECF No.
52-4 at 4.)  Viewing this evidence in the light most favorable
to Molock, a jury could find that Shue did not have enough
information to show that it was fairly probable that Molock was

29

involved in the robbery and that it was just as likely that "Vaughn" was a nick name of Lavon Hall.  "[A] positive identification by a victim witness, without more," is ordinarily sufficient to establish probable cause, absent "[i]ndependent exculpatory evidence" or "substantial evidence of the witness's own unreliability," Vega v. Ripley, 571 F. App'x 96, 99 (3d Cir. 2014) (quoting Wilson, 212 F.3d at 790), but in this case the victim did *not* identify Molock.  Moreover, like the officer in Reedy, neither McDevitt nor Shue took the simple available investigative step of showing Barkley a photo of Molock even though one had been apparently taken the night before.  Nor did they consider interviewing Molock to determine if he was in Clementon on the evening of June 22, 2011, seek other witnesses, or otherwise obtain facts linking Molock to the robbery.  Nor did they even consider apparently the possibility that Molock was not involved.

In determining probable cause, courts have "consistently recognized the value of corroboration . . . by independent police work." Illinois v. Gates, 462 U.S. 213, 241 (1983).  As we have noted, Shue's report and McDevitt's deposition show that they knew that Molock had been arrested the day before the robbery and, construing this fact in the light most favorable to Molock, a jury could infer that the officers knew that Molock's

30

mugshot was readily available to use in a photo array conducted
with the victim.[11]  Shue and McDevitt suspected Molock, and while
we believe they were reasonable about that suspicion "[p]robable
cause to arrest requires more than mere suspicion[.]" Orsatti v.
New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995).  The
probable cause "inquiry must determine whether the information
is adequate to narrow down the list of potential suspects so
that probable cause for petitioner's arrest and not mere
possibility is the criterion." United States ex rel. Wright v.
Cuyler, 563 F.2d 627, 630 (3d Cir. 1977).  Moreover, "[p]olice
should be expected to collect and review evidence before seeking
a warrant to invade a citizen's . . . person, and should not be
permitted to rely on unsubstantiated hunches."  United States v.
Brown, 631 F.3d 638, 649 (3d Cir. 2011).

In this case, by failing to conduct basic investigative
steps to confirm Shue's suspicion that Molock could have been a

---

[11] As previously explained, the charges were dropped due to
misidentification shortly after an investigator from the Camden
County Prosecutor's Office conducted such a photo array with the
victim, who identified someone other than Molock. (ECF Nos. 55-
10, 55-11.)  Five days later, on July 25, 2011, an attorney from
the Grand Jury Unit of the Camden County Prosecutor's Office
recommended that Molock be released on recognizance because the
office "received information that this defendant was
misidentified" and the charges were dismissed. (ECF No. 55-11 at
4.)

perpetrator, McDevitt, who was the investigating officer, created the "unnecessary danger of unlawful arrest." Malley, 475 U.S. at 345.  Construing the facts in the light most favorable to Molock, a jury could find that McDevitt asserted that the victim had identified Molock and omitted the information obtained from Shue because McDevitt did not think that Shue's information by itself established probable cause.  The Court cannot say as a matter of law that McDevitt's revised warrant affidavit would have provided a "substantial basis" for the conclusion that there was a "fair probability" that Molock was involved in the robbery.  Gates, 462 U.S. at 238.

To summarize, a jury could find that McDevitt's warrant application recklessly stated that the victim identified Molock and recklessly omitted relevant facts, and that, construing the facts in the light most favorable to Molock, a corrected affidavit would not have shown probable cause to arrest Molock. The Court will, therefore, deny the motion for summary judgment filed by McDevitt.

However, Officer Shue acted reasonably in "connecting the dots" between the victim's description of Vaughn and Shue's personal experience the night before with Molock, and then informing the investigating officer of his observations and inferences.  Unlike McDevitt, Shue was not the investigating

32

officer, Shue did not make the decision to apply for the warrant without asking the victim to identify Molock, and Shue did not recklessly disregard the truth in applying for the arrest warrant.  Construing the evidence in the light most favorable to Molock, a jury could not find that Shue violated Molock's Fourth Amendment rights or that a reasonable police officer would have understood that what Shue did violated Molock's Fourth Amendment rights.  The Court will grant summary judgment in favor of Shue.

### III.   CONCLUSION

Based on Plaintiff's withdrawal of the claims against Neil Clark, the Borough of Clementon, and fictitious Defendants, the Court will dismiss those claims.  The Court will deny the summary judgment motion of Defendant McDevitt and grant the summary judgment motion of Defendant Shue.

An accompanying Order follows this Opinion.


 s/ Noel L. Hillman
**NOEL L. HILLMAN, U.S.D.J.**

DATED: March 31, 2016

At Camden, New Jersey